JS 44 (Rev. 06/17)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Dickson Nyesuah

**DEFENDANTS**
City of Philadelphia (Department of Human Services)

**(b)** County of Residence of First Listed Plaintiff     Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Frederick M. Walton, Jr.
1800 JFK Blvd., Suite 1111 Philadelphia, PA 19103 (215)563-4470

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964 (Title VII) 29 U.S.C. 794
Brief description of cause:
Employment Discrimination

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.     DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
06/05/2019

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*   40755

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 7732 Frontenac Street Philadelphia, PA 19111 _____

Address of Defendant: _____ 1515 Arch Street Philadelphia, PA 19102 _____

Place of Accident, Incident or Transaction: _____ City of Philadelphia ( Department of Human Services) _____

---

**RELATED CASE, IF ANY:**

Case Number: __2:19-cv-01203__    Judge: __Mark A. Kearney__    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☑    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/05/2019    _____Attorney-at-Law / Pro Se Plaintiff_____    _____40755_____
Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

**A.    Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

## ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Frederick M. Walton, Jr.__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 06/05/2019    _____Attorney-at-Law / Pro Se Plaintiff_____    _____40755_____
Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Dickson Nyesuah                    :                    CIVIL ACTION
                                   :
        v.                         :
City of Philadelphia               :
(Department of Human Service)      :                    NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                            (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (✗)

6/5/2019                    _____                    Dickson Nyesuah
**Date**                    **Attorney-at-law**                    **Attorney for**

215- 562-4979.             215-568-                               fulton @ larypenn.com
**Telephone**              **FAX Number**                         **E-Mail Address**

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Dickson Nyesuah
7732 Frontenac Street
Philadelphia, PA 19111                          :
                                                :
                                                :
                          Plaintiff             :
                                                :
          vs.                                   :
                                                :
City of Philadelphia                            :
(Department of Human Services)                  :
1515 Arch Street                                :
Philadelphia, PA 19102                          :
                                                :
                          Defendant             :


## **COMPLAINT**

### I.  **PRELIMINARY STATEMENT:**

1.      This is an action for an award of damages, declaratory and injunctive

relief, attorneys' fees and other relief on behalf of Plaintiff, Dickson Nyesuah. Plaintiff is a

former employee of Defendant, City of Philadelphia, who has been harmed by the Defendant's

discriminatory employment practices.

2.      This action arises under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 29 U.S.C. §794, *et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S.

§951 *et seq*.

### II.  **JURISDICTION AND VENUE**

3.      The jurisdiction of this Court is invoked, and venue is proper in this

district, pursuant to 28 U.S.C. §1391 as Plaintiff's claims are substantively based on the Title VII

Act.

4.     The supplemental jurisdiction of this Court is invoked pursuant to 28

U.S.C. §1367 to consider Plaintiff Nyesuah's claims arising under the PHRA.

5.     All conditions precedent to the institution of this suit have been fulfilled,

such as exhausting Administrative remedies and obtaining a "Notice of Suit Rights" letter from

the US Equal Employment Opportunity Commission ("EEOC").   Plaintiff Nyesuah has satisfied

all jurisdictional prerequisites to the maintenance of this action.

## III.   PARTIES

6.     The Plaintiff herein is:

Dickson Nyesuah
7732 Frontenac Street
Philadelphia, PA 19111

7.     The Defendant herein is:

City of Philadelphia
(Department of Human Services)
1515Arch Street
Philadelphia, PA 19102

It is further averred Plaintiff has worked for Defendant, which is a municipality

that comprises many agency arms, one of which is the Department of Human Resources located

at 1515 Arch Street, 8th Floor, and Philadelphia, PA.

## IV.   ADDITIONAL UNDERLYING FACTS

8.     The Defendant, on information and belief, employed 15 or more persons

when the unlawful conduct alleged in this Complaint occurred.

9.     Plaintiff had been employed at the Department of Human Resources since

August 14, 2006.

10.     Plaintiff was employed by Defendant as Social Work Trainee, and he rose

through the ranks to become a Social Worker II.

2

11.    At all times relevant hereto, the Defendant was acting through its agents, servants and employees, who were acting within the scope of their authority, course of their employment and under the direct control of the Defendant.

12.    At all times material herein, Defendant is and has been a "person" and "employer" as defined under the Title VII and the PHRA, and is accordingly subject to the provisions of each Act.

V.    **STATEMENT OF CLAIMS**

13.    Paragraphs 1 through 12 are incorporated by reference, as if set forth at length.

14.    The Plaintiff alleges that prior to and continuing until on or about March 18, 2018, the Defendant, through its agents, servants and employees, subjected him to discrimination violative of Title VII and the PHRA ultimately resulting in his termination on March 18, 2018.  The facts in support of these allegations include, but are not limited to, the following:

VI.    **UNDERLYING FACTS**

15.    Plaintiff alleges that Defendant, through its agents, servants, and employees, subjected him to discrimination and a hostile work environment on the basis of his race (African- American), color, and national origin (Liberia, West Africa) Plaintiff further believes and avers that the Defendant terminated his employment in retaliatory fashion for his objecting to said conduct and engaging in protected activity. These actions constitute violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").

16.     Plaintiff began employment with Respondent City of Philadelphia Department of Human Services ("Respondent" or "DHS") on or about August 14, 2006 in the role of Social Worker trainee and he rose through the ranks until becoming a Social Worker II.

17.     During his eleven (11) years of employment with Respondent, Plaintiff performed his job functions in a dutiful and competent manner and at all times maintained at least a satisfactory performance level.

18.     Indeed, Plaintiff's work ethic and productivity have been consistently good and he received positive annual performance evaluations each year with ratings of either superior or outstanding.

19.     The Intake and Investigations division of DHS, in which Plaintiff worked, is comprised of several "units". They are each made up of one Supervisor and around three or four Social Workers.

20.     Initially, Plaintiff was assigned to Unit #73 under supervisor Angela Simes ("Simes") (Caucasian).

21.     Within Unit #73 supervised by Simes, the standard practice was for employees to submit their CPS and GPS outcomes and determinations without the safety assessment work sheets and structure progress notes necessarily being entered into the system as technically required by agency policy.

22.     DHS completed a review and audit on or about April 7, 2016 and Simes was not disciplined by either Loretta Weston ("Weston") ("African-American"), Administrator, or Gina McCone ("McCone") ("Caucasian-American"), Intake Director, for these practices occurring under her oversight.

23.     In or around the Spring of 2016, McCone created Unit #53.

4

24.     McCone, a Caucasian American, deliberately and selectively placed only employees of African descent under supervisor Onye Osuji ("Osuji") (Nigeria, West Africa) into Unit #53.

25.     Besides Plaintiff, Unit #53 included Robyn Kunzekweguta ("Kunzekweguta") (Zimbabwe, Southern Africa) and Charles Coleman (Liberia, West Africa).

26.     In crafting Unit #53, McCone racially and discriminatorily segregated Plaintiff and his coworkers due to their African ethnicity.

27.     Furthermore, on several occasions, McCone and staff in other units and divisions derogatorily referred to Unit #53 as the "African Unit".

28.     The unit moreover became a dumping ground of sorts for the cases of workers who were either leaving DHS or transferring to another unit or section.

29.     By way of example, the cases of Intake workers Shannon Jones, Aliyah Williams, and Malikah Pierce were all pushed onto Unit #53, when those employees left or transferred.

30.     On or about April 27, 2017, Plaintiff received the Intake Region Honors Certificate for his hard work, dedication, and willingness to assist others in his role.

31.     Despite Plaintiff's successful performance of his job functions, he and his fellow members of Unit #53 continued to encounter antagonism with respect to their national origin.

32.     On or about September 18, 2017, McCone met with Unit #53 and told them that while they were doing a fine job and were working hard according to Administrator Weston, she needed to remove Osuji to another unit as Supervisor in relation to Osuji having made an internal complaint of hostile work environment.

33.     When Plaintiff and the other Social Workers of Unit #53 expressed concern and confusion over the decision, McCone became agitated and stated her decision was final whether they liked it or not.

34.     The following day on or about September 19, 2017, the members of Unit #53 consulted with their DC 47 Union Representative Cherone Hall ("Hall") to discuss the actions being taken by McCone and grieve their concerns about race and national origin related bias.

35.     Later that day, Hall met with McCone and relayed the unit members' concerns to her. Following this meeting and unhappy with the fact that her subordinates submitted their grievances about her to the union, McCone created a retaliatory work environment through actions such as refusing to talk to the members of Unit #53, ignoring their inquiries, and exhibiting anger toward them.

36.     Also on or about September 19, 2017, Plaintiff observed a Payroll staffer bringing McCone the overtime slips for Unit #53.

37.     When Plaintiff asked the staffer what was going on, she told him that Director McCone had asked to see the entire unit's overtime slips.

38.     Soon after the filing of the grievance with the DC 47 Union Representative, on or about October 16, 2017, McCone requested to meet with Plaintiff and his Union Representative Hall.

39.     During this meeting, McCone stated that she completed a caseload audit and overtime slips review, observed some issues that discussed with Upper Management and had to dissolve Unit #53.

40.     On this day, McCone requested that Plaintiff turn over all of his case files and records and DHS disabled all of his work issued devices.

41.     Michelle Sensky ("Sensky"), Human Resources Staff Administrator, reassigned Plaintiff to the 7th floor case record room as his temporary reassignment pending the outcome of a disciplinary hearing.

42.     Plaintiff believes and avers that McCone instituted an audit of Unit #53 in retaliation for the union grievance and as a means of national origin based discrimination.

43.     As a result, Plaintiff filed an EEOC Charge (EEOC No. 530-2018-00278) on or about October 25, 2017, detailing most of the above and alleging race and national origin discrimination and retaliation. Around this time, Osuji filed an EEOC Charge as well.

44.     On or about October 27, 2017, mere days after Plaintiff's filing of an EEOC Charge, McCone officially served him with an Employee Violation Report ("EVR"). The EVR put forth charges of falsification of visits, falsification of overtime, and poor work performance, but he denied the allegations and thus neglected to sign.

45.     This same day, Plaintiff was walking by and overheard McCone bragging to her secretary, "I will get rid of these African people one by one in this section" and laughing about it.

46.     DHS held a preliminary hearing for Plaintiff on or about November 14, 2017 and then a formal discipline hearing before a panel on or about January 24, 2018.

47.     At this hearing, Plaintiff presented testimony and evidence that he conducted visits in each of his cases as policy required and that there was never any falsification of overtime or visitations. Concerning the allegation of poor work

7

performance, Plaintiff explained that was overwhelmed with his own cases because he was shouldering the burden of other employees' cases as well.

48.     Plaintiff noted that due to the overload of cases, the delay of inputting notes into the online system was agency wide (visits were supposed to be input into the system within six day period).

49.     On or about January 24, 2018, the hearing panel concluded their deliberation and recommended fifteen (15) days' suspension for Plaintiff.

50.     However, on or about March 23, 2018 there was a meeting to review the hearing panel's decision in the matter.

51.     Ultimately, the Commissioner decided to approve the panel's recommendation to sustain charges and enact a suspension, but the Commissioner went further and amended the panel recommendation to thirty (30) days' suspension with the intent to dismiss.

52.     DHS Management told Plaintiff that March 23, 2018 was to be his last day of work and he had to turn over his ID cards, badge, and agency equipment.

53.     Plaintiff believes and avers that Respondent discriminated against him and his Unit #53 coworkers on account of their race and ethnicity, despite their good performance and successful tenure at DHS.

54.     He further believes and avers that Respondent and McCone targeted him and Unit #53 for audit because they had engaged in protected activity and filed EEOC Charges and/ or supported each other's complaints and EEOC Charges.

55.     Upon information and belief, no other intake unit in the agency got audited around this time.

8

56.     Respondent subjected Plaintiff to a pattern of retaliatory animus and antagonism which culminated in the termination of his employment.

57.     Respondent did not give Plaintiff any prior indication that his work performance was poor nor did it follow the progressive discipline policy as required by the agency.

58.     Plaintiff thus believes and avers that the reasoning behind his suspension and subsequent termination was pretextual.

59.     Furthermore, Plaintiff has since learned that not long after his termination, DHS transferred McCone to the Adoption section.

## COUNT I
## DISCRIMINATORY TREATMENT – ARISING UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 BASED ON NATIONAL ORIGIN AND RACE
## DICKSON NYESUAH vs. CITY OF PHILADELPHIA

60.     Paragraphs 1- 59 are incorporated herein as if set forth at length.

61.     Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, religion, sex or national origin. The Act also makes it illegal to discriminate based upon retaliation against as individual who complains about discriminatory conduct. Plaintiff alleges violations based on race as set forth below;

62.     Plaintiff began employment with Defendant City of Philadelphia Department of Human Services ("Respondent" or "DHS") on or about August 14, 2006 in the role of Social Worker Trainee, and rose through the ranks until becoming a Social Worker II.

63.     During his eleven (11) years of employment with Defendant, Plaintiff performed his job functions in a dutiful and competent manner and at all times maintained at least a satisfactory performance level.

9

64.     The Intake and Investigations division of DHS in which Plaintiff last worked is comprised of several "units". They are each consisting of one Supervisor and around three or four Social Workers.

65.     In or around 2016, Intake Director Gina McCone ("McCone") (Caucasian, American) forcibly transferred Dickson Nyesuah ("Nyesuah") (Liberia, West Africa), Social Worker II, to Plaintiff's unit, even though Nyesuah did not wish to be transferred and Plaintiff was not consulted about the decision.

66.     Shortly thereafter, McCone also transferred Charles Coleman ("Coleman") (Liberia, West Africa) and Robyn Kunzekweguta ("Kunzekweguta") (Zimbabwe, Southern Africa) to Plaintiff's unit.

67.     McCone deliberately and selectively placed only employees of African descent under Plaintiff into Unit #53.

68.     In crafting Unit #53, McCone racially and discriminatorily segregated Plaintiff and her unit members due to their African ethnicity.

69.     Furthermore, on several occasions, McCone and staff in other units and divisions derogatorily referred to Unit #53 as the "African Unit."

70.     By way of example, the cases of Intake workers Shannon Jones, Aliyah Williams, and Malikah Pierce were all pushed onto Unit #53 when those employees left or transferred.

71.     On or about April 27, 2017, Plaintiff received the Intake Region Honors Certificate for his hard work, dedication, and willingness to assist others in his role.

72.     Despite Plaintiff's successful performance of his job functions, he and his fellow members of Unit #53 continued to encounter antagonism with respect to their national origin.

73.     On or about September 18, 2017, McCone met with Unit #53 and told them that while they were doing a fine job and were working hard according to Administrator Weston, she needed to remove Osuji to another unit as supervisor in relation to Osuji having made an internal complaint of hostile work environment.

74.     When Plaintiff and the other Social Workers of Unit #53 expressed concern and confusion over the decision, McCone became agitated and stated her decision was final whether they liked it or not.

75.     The following day on or about September 19, 2017, the members of Unit #53 consulted with their DC 47 Union Representative Cherone Hall ("Hall") to discuss the actions being taken by McCone and grieve their concerns about race and national origin related bias.

76.     Later that day, Hall met with McCone and relayed the unit members' concerns to her. Following this meeting and unhappy with the fact that her subordinates submitted their grievances about her to the union, McCone created a retaliatory work environment through actions such as refusing to talk to the members of Unit #53, ignoring their inquiries, and exhibiting anger toward them.

77.     Also on or about September 19, 2017, Plaintiff observed a Payroll staffer bringing McCone the overtime slips for Unit #53.

78.     When Plaintiff asked the staffer what was going on, she told him that Director McCone had asked to see the entire unit's overtime slips.

11

79.     Soon after the filing of the grievance with the DC 47 Union Representative, on or about October 16, 2017, McCone requested to meet with Plaintiff and his Union Representative Hall.

80.     During this meeting, McCone stated that she completed a caseload audit and overtime slips review, observed some issues that discussed with Upper Management and had to dissolve Unit #53.

81.     On this day, McCone requested that Plaintiff turn over all of his case files and records and DHS disabled all of his work issued devices.

82.     Michelle Sensky ("Sensky"), Human Resources Staff Administrator, reassigned Plaintiff to the 7th floor case record room as his temporary reassignment pending the outcome of a disciplinary hearing.

83.     Plaintiff believes and avers that McCone instituted an audit of Unit #53 in retaliation for the union grievance and as a means of national origin based discrimination.

84.     As a result, Plaintiff filed an EEOC Charge (EEOC No. 530-2018-00278) on or about October 25, 2017 detailing most of the above and alleging race and national origin discrimination and retaliation. Around this time, Osuji filed an EEOC Charge as well.

85.     On or about October 27, 2017, mere days after Plaintiff's filing of an EEOC Charge, McCone officially served him with an Employee Violation Report ("EVR"). The EVR put forth charges of falsification of visits, falsification of overtime, and poor work performance, but he denied the allegations and thus neglected to sign.

86.     This same day, Plaintiff was walking by and overheard McCone bragging to her secretary, "I will get rid of these African people one by one in this section" and laughing about it.

87.     DHS held a preliminary hearing for Plaintiff on or about November 14, 2017 and then a formal discipline hearing before a panel on or about January 24, 2018.

88.     At this hearing, Plaintiff presented testimony and evidence that he conducted visits in each of his cases as policy required and that there was never any falsification of overtime or visitations. Concerning the allegation of poor work performance, Plaintiff explained that was overwhelmed with his own cases because he was shouldering the burden of other employees' cases as well.

89.     Plaintiff noted that due to the overload of cases, the delay of inputting notes into the online system was agency wide (visits were supposed to be input into the system within six day period).

90.     On or about January 24, 2018, the hearing panel concluded their deliberation and recommended fifteen (15) days' suspension for Plaintiff.

91.     However, on or about March 23, 2018 there was a meeting to review the hearing panel's decision in the matter.

92.     Ultimately, the Commissioner decided to approve the panel's recommendation to sustain charges and enact a suspension, but the Commissioner went further and amended the panel recommendation to thirty (30) days' suspension with the intent to dismiss.

93.     DHS Management told Plaintiff that March 23, 2018 was to be his last day of work and he had to turn over his ID cards, badge, and agency equipment.

94.    Plaintiff believes and avers that Respondent discriminated against him and his Unit #53 coworkers on account of their race and ethnicity, despite their good performance and successful tenure at DHS.

95.    He further believes and avers that Respondent and McCone targeted him and Unit #53 for audit because they had engaged in protected activity and filed EEOC Charges and/ or supported each other's complaints and EEOC Charges.

96.    Upon information and belief, no other intake unit in the agency got audited around this time.

97.    Respondent subjected Plaintiff to a pattern of retaliatory animus and antagonism which culminated in the termination of his employment.

98.    Respondent did not give Plaintiff any prior indication that his work performance was poor nor did it follow the progressive discipline policy as required by the agency.

99.    Plaintiff thus believes and avers that the reasoning behind his suspension and subsequent termination was pretextual.

100.    Furthermore, Plaintiff has since learned that not long after his termination, DHS transferred McCone to the Adoption section.

**COUNT II**
**DISCHARGE – RETALIATION-DISCRIMINATION-ARISING UNDER TITLE VII OF**
**THE CIVIL RIGHT ACT OF 1964 BASED ON NATIONAL ORIGIN AND RACE**
**DICKSON NYESUAH vs. CITY OF PHILADELPHIA**

101.     Paragraphs 1 through 100 are incorporated, as if set forth at length.

102.     Because of the continued harassment by Weston and McCone and the
failure of Defendant to investigate Plaintiff's concerns, on or about May 31, 2018, Plaintiff
filed an EEOC Charge on the advice of his union. The EEOC Charge (EEOC No. 530-2018-
03413) detailed the above conduct and alleged race and national origin discrimination and
retaliation.

103.     Once Weston and McCone received notice that Plaintiff had filed an
EEOC Charge, which he dual-filed with the Pennsylvania Human Relations Commission
(PHRC), the discriminatory conduct and harassment from Weston and McCone intensified.

104.     The discriminatory animus also extended to Coleman, Kunzekweguta, and
Nyesuah, the social workers of African descent that Plaintiff supervised.

105.     On or about October 27, 2017, mere days after Plaintiff's filing of an
EEOC Charge, McCone officially served him with an Employee Violation Report ("EVR").
The EVR put forth charges of falsification of visits, falsification of overtime, and poor work
performance, but he denied the allegations and thus neglected to sign.

106.     This same day, Plaintiff was walking by and overheard McCone
bragging to her secretary, "I will get rid of these African people one by one in this section"
and laughing about it.

107.     DHS held a preliminary hearing for Plaintiff on or about November
14, 2017 and then a formal discipline hearing before a panel on or about January 24, 2018.

15

108.    At this hearing, Plaintiff presented testimony and evidence that he conducted visits in each of his cases as policy required and that there was never any falsification of overtime or visitations. Concerning the allegation of poor work performance, Plaintiff explained that was overwhelmed with his own cases because he was shouldering the burden of other employees' cases as well.

109.    Plaintiff noted that due to the overload of cases, the delay of inputting notes into the online system was agency wide (visits were supposed to be input into the system within six day period).

110.    On or about January 24, 2018, the hearing panel concluded their deliberation and recommended fifteen (15) days' suspension for Plaintiff.

111.    However, on or about March 23, 2018 there was a meeting to review the hearing panel's decision in the matter.

112.    Ultimately, the Commissioner decided to approve the panel's recommendation to sustain charges and enact a suspension, but the Commissioner went further and amended the panel recommendation to thirty (30) days' suspension with the intent to dismiss.

113.    DHS Management told Plaintiff that March 23, 2018 was to be his last day of work and he had to turn over his ID cards, badge, and agency equipment.

114.    Plaintiff believes and avers that Respondent discriminated against him and his Unit #53 coworkers on account of their race and ethnicity, despite their good performance and successful tenure at DHS.

16

115.    He further believes and avers that Respondent and McCone targeted him and Unit #53 for audit because they had engaged in protected activity and filed EEOC Charges and/ or supported each other's complaints and EEOC Charges.

116.    Upon information and belief, no other intake unit in the agency got audited around this time.

117.    Respondent subjected Plaintiff to a pattern of retaliatory animus and antagonism which culminated in the termination of his employment.

118.    Respondent did not give Plaintiff any prior indication that his work performance was poor nor did it follow the progressive discipline policy as required by the agency.

119.    Plaintiff thus believes and avers that the reasoning behind his suspension and subsequent termination was pretextual.

120.    Furthermore, Plaintiff has since learned that not long after his termination, DHS transferred McCone to the Adoption section.

## COUNT III
## DISCHARGE- NATIONAL ORIGIN AND RACE- ARISING UNDER PHRA
## VIOLATION OF SECTION 5(D) OF PHRA 43 P.S. 951-963
## DICKSON NYESUAH vs. CITY OF PHILADELPHIA

121.    Plaintiff incorporates paragraphs 1 through 120 as if set forth at length.

122.    The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Nyesuah to discrimination by terminating the Plaintiff's employment based on his race and national origin, constituted a violation of the PHRA.

123.    As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Nyesuah sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

124.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Nyesuah suffered severe emotional distress, embarrassment, humiliation and loss of self-esteem.

## PRAYER FOR RELIEF

125.    Plaintiff incorporates paragraphs 1 through 124 as if set forth at length.

**WHEREFORE,** Plaintiff Nyesuah requests that this Court enter judgment in his favor and against the Defendant, and order that:

A.    Defendant compensate Plaintiff Nyesuah with back pay, at a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination;

B.    Defendant compensate Plaintiff Nyesuah with an award of front pay, if appropriate;

C.    Defendant pay to Plaintiff Nyesuah punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

D.    Defendant pay to Plaintiff Nyesuah pre and post judgment interest, the costs of suit and attorney and expert witness fees as allowed by law;

18

E.      Defendant shall eliminate all unlawful discriminatory practices as well as remedy the discriminatory effect of past practices and procedures;

F.      The Court shall award such other relief as if deemed just and proper, in law and/or equity, including injunctive relief if the Honorable Court deems said relief appropriate.

## JURY DEMAND

Plaintiff Nyesuah demands trial by jury.


Respectfully submitted,

HARVEY, PENNINGTON LTD.

DATE: June 5, 2019                               BY:
                                                     FREDERICK M. WALTON, JR., ESQUIRE
                                                     Attorney for Plaintiff
                                                     Dickson Nyesuah

19